# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 8, 2000 Session

## STATE OF TENNESSEE v. MICHAEL D. RIMMER

**Appeal from the Criminal Court for Shelby County**
**No. 97-02817, 98-01033 & 98-01034**

---

**No. W1999-00637-CCA-R3-DD - FILED MAY 25, 2001**

---

PART II:
JAMES CURWOOD WITT, JR., J., delivered the opinion of the court as to Part II, joined by DAVID G. HAYES, J.

This separate opinion addresses issues relative to the sentencing phase of the trial, as well as the defendant's cumulative error issue. Expressed herein are the views of the majority, consisting of Judge Hayes and Judge Witt. The minority view of Judge Williams is expressed in his lead opinion.

## I.    SENTENCING HEARING

During the sentencing phase of the trial, the state relied upon two aggravating circumstances in pursuit of a death sentence: "[t]he defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person," Tenn. Code Ann. § 39-13-204(i)(2) (Supp. 2000), and "[t]he murder was knowingly committed, solicited, directed or aided by the defendant, while the defendant had a substantial role in committing or attempting to commit, or was fleeing after having a substantial role in any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aircraft piracy or unlawful throwing, placing or discharging of a destructive device or bomb." Tenn. Code Ann. § 39-13-204(i)(7) (Supp. 2000).

In support of the (i)(2) ("prior violent felony") aggravator, the state relied upon four earlier convictions. They were (1) aggravated assault, indictment number 89-02737, (2) rape, indictment number 89-02738, (3) assault with intent to commit robbery with a deadly weapon, indictment number 85-00448, and (4) aggravated assault, indictment number 85-00449. The state confined its argument to these prior felonies, and the trial court properly instructed the jury that it could consider evidence of these four crimes in passing on the applicability of the prior violent felony aggravating circumstance.

With respect to the (i)(7) ("felony murder") aggravator, the predicate felony was the aggravated robbery proven during the guilt phase of the trial. The court properly instructed the jury that a finding of this factor should be based upon a determination that "[t]he murder was knowingly committed, solicited, directed, or aided by the defendant, while the defendant had a substantial role in committing or attempting to commit, or was fleeing after having a substantial role in committing or attempting to commit, any robbery."

During deliberations, the jury sent a note to the trial judge, which read, "Jury would like to see exhit [sic] 81. aggreveted [sic] charges and all the charges raised today that were not part of previos [sic] testimony Exhit [sic] 41." The court then provided the jury with exhibits 41 and 81, those being certified copies of the defendant's 1989 and 1985 convictions. These exhibits inadvertently had not been provided to the jury when it first retired. Exhibit 41 contains judgments for the prior convictions of first degree burglary,[4] aggravated assault and rape from 1989. Exhibit 81 contains judgments for the prior convictions of assault with intent to commit robbery with a deadly weapon and aggravated assault from 1985.

Thereafter, the jury returned a verdict of a death sentence. In the space provided for the jury to list the aggravating circumstance or circumstances found, the jury listed

> Guilty of Murder in the 1st degree, aggravated assault with intent to commit robbery, theft Nov. 7, 1998; 1st degree Burglary, aggravated assault, and rape - June 6, 1989; and assault with intent to commit robbery with a deadly weapon and aggravated assault, June 10, 1985[.]

The trial court read from the verdict form in open court but unilaterally omitted theft and burglary from its recitation without informing counsel what the verdict form actually reflected.[5] The court then polled the jury, and the jurors affirmed that the verdict was that of each individual.[6] The record does not reflect that at any point during its receiving of the verdict that the court attempted to confirm whether the jury found the prior violent felony and/or felony murder aggravators. So far as we can tell, the court likewise made no effort to define which of the convictions listed on the verdict form as "aggravators" applied to either the prior violent felony or felony murder aggravators.

---

[4]Evidence of the first degree burglary conviction was admitted during the guilt phase of the trial. It was not submitted for the jury's consideration in determining the existence of the prior violent felony aggravator during the sentencing phase.

[5]Attached as an appendix to this opinion is a chart illustrating the prior crimes submitted to the jury, found pursuant to the verdict, and announced by the trial court, which may better illustrate these matters than does the written account contained in the body of this opinion.

[6]The actual polling is not transcribed. The record contains only the court reporter's summary, which states "The jury was polled and each answered affirmatively."

The judgment does not reflect the aggravating circumstance(s) found by the jury. However, in its "Report of Trial Judge in First Degree Murder Cases," which the trial court completed pursuant to Tennessee Supreme Court Rule 12, the court listed both the prior violent felony and felony murder aggravators as having been instructed but only the prior violent felony aggravator as having been found by the jury.

The defendant argues in this appeal that the jury's irregular verdict did not contain a finding of any aggravating circumstance, and therefore, the trial court erred in accepting the verdict and imposing a sentence of death. We therefore begin with the question whether the jury found the existence of either of the aggravating factors submitted for its consideration, or in other words, whether the jury returned a verdict which found one or both of the submitted aggravating circumstances.

Obviously, the preferred manner for a jury to report its finding of an aggravating circumstance is for it to do so in the language of the statute so that there can be no mistake. *See generally* Tenn. Code Ann. § 39-13-204(i) (Supp. 2000). Nevertheless, a verbatim recitation from the statute is not required. *State v. Teel*, 793 S.W.2d 236, 250 (Tenn. 1990). If the aggravating circumstance identified is "clearly . . . allowed by the statute" and if effective appellate review of the sentence imposed is possible, a paraphrased statement is acceptable. *Id.* Even so, a less-than-verbatim statement of an aggravating circumstance must be so clear and certain that its meaning is not capable of mistake. *State v. Henley*, 774 S.W.2d 908, 915, 917 (Tenn. 1989); *Baldwin v. State*, 213 Tenn. 49, 52, 372 S.W.2d 188, 189 (Tenn. 1963).

All three members of this panel believe that the jury intended to find the existence of the prior violent felony aggravator, and this aggravator was the basis of the verdict that was accepted by the trial court. The jury's verdict listed in the space for aggravating circumstances each of the four crimes submitted for consideration under the prior violent felony aggravator. Any one of these four crimes, standing alone, would have been sufficient to establish this circumstance, and the proof that the defendant had the four qualifying convictions was undisputed. Because any one of the four prior crimes could have supported this factor, the fact that additional crimes are listed does not call into question the reliability of our conclusion that the jury found the prior violent felony aggravating circumstance. *Cf. State v. Boyd*, 959 S.W.2d 557, 561 (Tenn. 1998) (prior violent felony aggravating circumstance "may be more qualitatively persuasive and objectively reliable" than other aggravating circumstances); *State v. Howell*, 868 S.W.2d 238 (Tenn. 1993) (same).

With respect to the felony murder aggravator, however, it is not clear to the majority that the jury found this factor. The jury was instructed that the basis for this factor was the defendant's commission of robbery contemporaneously with the victim's murder.[7] The

---

[7]Although theft is a predicate felony for the felony murder aggravator, *see* Tenn. Code Ann. § 39-13-204(i)(7) (Supp. 2000), the theft in this case was the taking of the Honda from the Featherston driveway, which the state's proof established occurred in January 1997. The murder of the victim did not occur until February 8, 1997. Thus, the victim's murder was not temporally related to the theft such that the murder took place "while the defendant had a substantial role in committing or attempting to commit, or was fleeing after having a substantial role in committing or attempting

(continued...)

jury's verdict during the sentencing phase contains no finding that the defendant had committed robbery. The state essentially concedes as much in its brief, advocating only that the jury found the prior violent felony aggravator. Implicit in the state's silence is a concession that the verdict reported does not contain a finding of the felony murder aggravator.[8] Furthermore, the crime of aggravated assault found by the jury is not a predicate felony listed in the statutory definition of the felony murder aggravating circumstance. We therefore cannot conclude that the jury's verdict clearly and unmistakably contains a finding of the felony murder aggravator. Moreover, as noted above, the trial court accepted the jury's verdict as a finding of only the (i)(2) aggravator.

For these reasons, the majority holds that the jury presented a verdict, and it intended to base that verdict upon the prior violent felony aggravating circumstance.

## II. ERRORS

We now advance to the difficult questions whether the form of the verdict was irregular and whether the trial court's unilateral revision of it was error. In this regard, we discern numerous errors, which considered cumulatively, so seriously undermine the majority's confidence in the result of the proceeding that reversal and remand for a new sentencing hearing is required.

## A. Error by Jury

Once the jury determined that at least one aggravating circumstance existed, it became its task to determine whether the aggravating circumstance or circumstances outweighed any mitigating circumstances beyond a reasonable doubt. Tenn. Code Ann. § 39-13-204(g)(1) (Supp. 2000). If the jury so determines, "the sentence shall be death." *Id.* at (g)(1)(B).

The verdict reflects that the jury considered eight crimes via the prior violent felony aggravating circumstance: first degree murder, theft, first degree burglary, aggravated assault, rape, assault with intent to commit robbery with a deadly weapon, aggravated assault, and assault with intent

---

(...continued)

to commit" the theft. *See id.* At the time of the offense, first degree murder was a predicate felony for the felony murder aggravator. *See* Tenn. Code Ann. § 39-13-204(i)(7) (Supp. 2000). However, the predicate murder must have been the murder of someone other than the victim of the felony murder. *See State v. Pritchett*, 621 S.W.2d 127 (Tenn. 1981); *see generally State v. Middlebrooks*, 840 S.W.2d 317 (Tenn. 1992).

[8] It is conceivable that the jury intended to find the felony murder aggravator via aggravated robbery of the victim contemporaneously with her murder. The date listed on the verdict form with the crime of aggravated assault with intent to commit robbery is "11/7/98," the date the jury returned its verdict in the guilt phase of this trial, while the correct date for this conviction is actually July 15, 1985. One might hypothesize from the date listed that the jury was focusing on the aggravated robbery of the victim but erroneously listed the prior aggravated assault conviction. However, such a conclusion would be only speculation, falling fall short of the requirement that a less-than-verbatim statement of the verdict must be so clear and certain that its meaning is not capable of mistake. *See Henley*, 774 S.W.2d at 915, 917; *Baldwin*, 213 Tenn. at 52, 372 S.W.2d at 189. As the law requires, we decline to uphold a sentence of death based upon mere speculation.

to commit robbery.[9]  The majority believes that consideration of certain of these crimes in the weighing of aggravating evidence against mitigating evidence was error.

The jury, in essence, considered twice as much evidence as it should have relative to the prior violent felony aggravator by considering eight felonies, rather than only the four that were eligible for consideration.  One of the ineligible felonies was not only the very same offense for which the jury was sentencing the defendant, but it was the offense of first degree murder, the most serious -- most violent -- of all the felonies considered by the jury as aggravating evidence.  Due to its nature, this ineligible first degree murder conviction may have been accorded substantial weight as a prior crime of violence.

A second and obvious concern with the jury's consideration of the crime of first degree murder is that it is not a *prior* felony under the statute.  *See* Tenn. Code Ann. § 39-13-204(i)(2) (Supp. 2000).  A corollary and third concern is that allowing a death sentence simply because the defendant was convicted in this case of first degree murder, without narrowing the class of more culpable defendants who are deserving of a death sentence, violates state and federal provisions against cruel and unusual punishment.  *See* U.S. Const. amend. VIII; Tenn. Const. art. I, § 16; *see also Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726 (1972); *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn. 1992) (imposition of death sentence based upon aggravating circumstance which duplicated the offense of felony murder did not narrow the class of death-eligible defendants under Tennessee Constitution).  The jury ran afoul of constitutional guarantees to the extent that it considered that the defendant's offense was aggravated and therefore death-eligible simply because it was first degree murder, without more.

One of the other offenses, theft, is not even a crime of violence to the person.  *See* Tenn. Code Ann. Sec. 39-14-103 (1997) (theft classified within chapter defining "offenses against property").

Likewise, another of the prior crimes, first degree burglary, is not a violent felony.  For purposes of the prior violent felony aggravator, only prior convictions "whose *statutory elements* involve the use of violence to the person" may be considered.  *See* Tenn. Code Ann. § 39-13-204(i)(2) (Supp. 2000) (emphasis added).  At the time of the defendant's first degree burglary, that offense was defined as

> Burglary is the breaking and entering into a dwelling house, or any
> other house, building, room or rooms therein used and occupied by
> any person or persons as a dwelling place or lodging either

---

[9]In contrast, the mitigating circumstances were (1) the defendant was a good and reliable worker; (2) the defendant's parents love him; (3) the defendant suffers from basic personality inadequacies which has created stress and erosion of self-confidence; (4) the prior rape and burglary convictions were a turning point in the defendant's life, as he served an eight-year sentence at an early age; (5) the defendant was supportive of his family in time and effort; (6) the defendant is loved and respected by family members; (7) the defendant and his family expressed sorrow in the loss of the victim; (8) the defendant is a skilled worker and can be expected to make a contribution in the future with his skills, and (9) the defendant's family would be devastated if a death sentence was imposed.

permanently or temporarily and whether as owner, renter, tenant, lessee or paying guest, by night, with intent to commit a felony.

Tenn. Code Ann. § 39-3-401(a) (1982) (repealed 1989). The statutory elements of first degree burglary do not involve the use of violence to the person.[10] *See generally State v. Davis*, 613 S.W.2d 218, 220 (Tenn. 1981) (characterizing burglary as "an offense against the security of the habitation"). In this case, the defendant's prior first degree burglary conviction was not submitted to the jury for consideration under this factor. Notwithstanding the court's exclusion of this prior crime, however, the jury considered it for this purpose. The jury's erroneous inclusion of this non-violent crime is further evidence that the jury went outside the bounds of the court's instructions in weighing the aggravating evidence against the mitigating evidence.[11]

An additional problem with the jury's finding of aggravating evidence is that the jury mistakenly believed there were four assault convictions, rather than three. In its listing of crimes constituting the aggravating circumstance, the jury listed the three actual prior assaultive convictions, as well as aggravated assault with intent to commit robbery with the date November 7, 1998. The record reflects no aggravated assault conviction for November 7, 1998. For some reason, the jury mistakenly believed the defendant had committed and had been convicted of an additional assaultive crime.

## B. Error by Trial Court

The trial court committed additional errors in its reception of the verdict. As we have outlined above, the jury's statement relative to aggravating circumstances was anomalous.

---

[10]We acknowledge that in *State v. Vincent Sims*, — S.W.3d —, No. W1998-00634-SC-DDT-DD, slip op. at 9 (Tenn. Apr. 17, 2001), the supreme court said that when a crime could be committed with or without violence, the trial court must make a factual inquiry to determine if the prior conviction is eligible for consideration under the (i)(2) aggravator. Further, we acknowledge that *Sims* relied upon *State v. Moore*, 614 S.W.2d 348, 351 (Tenn. 1981). In *Moore*, the state sought to introduce evidence of the defendant's prior second degree burglary and arson to prove the prior violent felony aggravator. The court held that "[b]ecause both crimes could be committed under circumstances either involving or not involving the use or threat of violence," a factual inquiry into the crimes was necessary to determine whether the state could use them as aggravating evidence. *Moore*, 614 S.W.2d at 351. However, *Moore* was decided under a prior version of the (i)(2) aggravator, which allowed admission of prior convictions involving "the use *or threat* of violence to the person." *Id*. (emphasis added). While the first degree burglary in question in the present case could be committed in a situation in which a *threat* of violence to the person exists (as required by the prior (i)(2) aggravator), the *statutory elements* of first degree burglary cannot be construed to include the actual use of violence to the person. As such, the supreme court's recent *Sims* decision does not mandate consideration of the factual predicate for the defendant's prior conviction of first degree burglary. *Cf. State v. Cribbs*, 967 S.W.2d 773, 781-82 (Tenn. 1998) (inadvertent admission of defendant's prior conviction of second degree burglary was error, but because state did not rely on it to prove the prior violent felony aggravator, error was harmless).

[11]Even if we are in error in concluding that first degree burglary cannot be committed in a mode which involves the use of violence to the person, *see supra* n.9, the trial court in this case made an affirmative determination that the crime was not eligible for consideration as proof of the (i)(2) aggravator. Upon the limited record that is before us relative to the prior first degree burglary, the majority sees no abuse of discretion in that determination. Although there is evidence that the defendant's criminal episode in which the first degree burglary occurred also involved an aggravated assault and a rape, commission of the latter potentially violent crimes was not necessary to consummate the burglary. *See State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999) (consummation of the intended felony not required to complete the crime of burglary).

The trial court did not have the jury clarify the aggravating circumstance(s) it found, and when the trial court announced the verdict, it read the crimes listed by the jury, minus theft and burglary, as the "aggravating circumstances" found by the jury. The court made no effort to inquire of the jury's intent with respect to the (i)(2) or (i)(7) aggravator. The court also did not inform the parties of its revision of the list of "aggravating circumstances." The trial court's polling of the jury, at least insofar as it is reflected in abridged form in the transcript, did not clarify the jury's verdict.

Tennessee law provides that if a jury returns an imperfect or incomplete verdict, the trial court has a duty to instruct the jury to amend it to proper form and have them return to the jury room for that purpose. *State v. Stephenson*, 878 S.W.2d 530, 554 (Tenn. 1994); *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993); *State v. James Lee Cannon*, No. 03C01-9808-CR-00272, slip op. at 13-14 (Tenn. Crim. App., Knoxville, Sept. 27, 1999), *perm. app. denied* (Tenn. 2000); *Gwinn v. State*, 595 S.W.2d 832, 835 (Tenn. Crim. App. 1979); *Meade v. State*, 530 S.W.2d 784, 787 (Tenn. Crim. App. 1975).

In this case, the trial judge abdicated his responsibility to have the jury render a verdict that unquestionably reflected its findings. As discussed above, the jury clearly found the (i)(2) aggravator, but its determination as to the (i)(7) aggravator is ambiguous. Some of the crimes listed as "aggravating circumstances" on the verdict form are crimes which are ineligible for consideration both under the (i)(2) and (i)(7) aggravators. The court's failure to see that the jury returned an intelligible verdict was error. *See State v. Henley*, 774 S.W.2d 908, 915 (Tenn. 1989) ("Since the reception of a verdict is not solely a ministerial as distinct from a judicial act, when the jury return (sic) into court with a verdict, it is not a matter of course to receive it in the form in which it is rendered. It is the duty of the Court . . . to look after its form and substance, so far as to prevent an unintelligible, or a doubtful, or an insufficient verdict from passing into the records of the court.") (quoting 23A C.J.S.2d *Verdict* § 388).

A second area of concern is the trial court's *sua sponte* revision of the verdict without informing counsel that a revision was being made. The majority believes that the trial court was without authority to covertly and substantially revise the jury's verdict. *Cf. State. v. Morris*, 788 S.W.2d 820, 825 (Tenn. Crim. App. 1990) (trial judge has duty to mold judgment to conform with verdict, but court does not have the authority to substitute a judgment that is substantially different).

### C. Effect of Errors

The ultimate question, of course, is that of the effect that these errors had on the outcome of the trial.

First, we must visit the state's argument that the defendant waived any objection to these errors by failing to object when the verdict was returned or in the motion for new trial. To be sure, a defendant's failure to object to a defective verdict prior to discharge of the jury has

been held to constitute waiver of any later complaint. *See Mounce*, 859 S.W.2d at 322-23. The defendant in the case at bar also did not later raise the issue in his motion for new trial. Ordinarily, this is a basis for waiver, as well. *See* Tenn. R. App. P. 3(e).

However, in capital cases this court is statutorily charged that we "shall" consider, *inter alia*, whether the death sentence was imposed arbitrarily and whether the evidence supports the jury's determination that the aggravating circumstance outweighs the mitigating circumstances. Tenn. Code Ann. § 30-13-206(c)(1)(A), (C) (1997). The errors present here are components of these questions and are therefore not beyond the scope of our review, notwithstanding the defendant's failure to raise them in the trial court. *See State v. Nesbit*, 978 S.W.2d 872, 880-81 (Tenn. 1998) (under Code section 39-13-206, supreme court had jurisdiction to review appellate issues in capital case despite defense counsel's failure to file a motion for new trial), *cert. denied,* 526 U.S. 1052, 119 S. Ct. 1359 (1999).

Errors affecting the jury's consideration of an invalid aggravating circumstance in a capital sentencing proceeding must result in reversal unless the reviewing court concludes that the error was harmless beyond a reasonable doubt. *See, e.g., State v. Howell*, 868 S.W.2d 238, 259 (Tenn. 1993). That is to say, the error is harmless only where the reviewing court concludes beyond a reasonable doubt that the sentence would have been the same had the jury not considered the improper evidence in aggravation. *See id.* at 262. This standard likewise applies in situations where an aggravating circumstance has been proven in part by evidence which was erroneously admitted. *See State v. Campbell*, 664, S.W.2d 281, 284 (Tenn. 1984) (trial court erred in admitting defendant's prior convictions of grand larceny and second degree burglary to prove prior violent felony aggravator, but error was harmless beyond a reasonable doubt where two eligible prior convictions were also admitted and there were two additional aggravating circumstances).

Moreover, multiple errors may require reversal of a capital sentencing, even if the errors when considered separately do not require relief. *State v. Bigbee*, 885 S.W.2d 797, 812 (Tenn. 1994); *see also State v. Brewer*, 932 S.W.2d 1, 28 (Tenn. Crim. App. 1996).

The errors in this case all relate generally to the jury's consideration of the aggravating circumstance and the conclusions that were drawn by the court from the jury's report of the aggravating circumstance. The jury erred in considering extraneous crimes in determining the existence of the (i)(2) aggravating circumstance and by including these crimes in the weighing process. The trial court then committed error in accepting an ambiguous verdict relative to the findings of aggravating circumstances, in failing to require the jury to clarify its verdict relative to aggravating circumstances, and in unilaterally revising the verdict relative to aggravating circumstances without informing counsel of the action. Our assessment of the effect of these errors includes, of course, consideration of the valid aggravating circumstance found by the jury as contrasted with the countervailing mitigating evidence. In that regard, we are constrained by our lack of knowledge of the submitted mitigating factors, if any, the jury found in making its weighing determination. *See generally* Tenn. Code Ann. § 39-13-204 (2000) (containing no provision requiring the jury's verdict to include a listing of mitigating factor(s) found). While precise knowledge of the mitigating factors found by the jury is not fatal to our

harmless error analysis, it adds to our uncertainty. Upon consideration, the majority cannot conclude that, given the multiplicity of errors affecting the integrity and reliability of the verdict itself, these errors pass harmless error scrutiny. In other words, we cannot say *beyond a reasonable doubt* that absent the errors, the result of the sentencing proceeding would have been the same. As such, the defendant must receive a new sentencing hearing.

Judges Hayes and Witt share the concerns expressed in Judge Williams' lead opinion relative to the ambiguity of standard verdict forms that jurors in this state are expected to complete in death penalty cases. This case vividly illustrates the difficulty jurors face in understanding and completing the standard verdict form and the perils which may ensue when a trial court attempts to divine intent and speak for a jury which has completed a verdict form in an ambiguous manner. For so long as the standard verdict form remains in use, trial judges must be particularly vigilant to ensure that the jurors understand and properly complete the task of accurately listing aggravating circumstance(s). Trial courts must likewise be vigilant of their own actions in interpreting juries' findings as reflected on the standard verdict forms.

_____
James Curwood Witt, Jr., Judge

# APPENDIX

| Defendant's Crimes | Submitted for (i)(2) Aggravator | Found by Jury | Verdict as Revised by Trial Court |
|---|---|---|---|
| 1st degree murder (current case) | | X | X |
| aggravated robbery (current case) | | | |
| theft over $1,000 (current case) | | X | |
| 1st degree burglary 6/6/89 89-02736 | | X | |
| aggravated assault 6/6/89 89-02737 | X | X | X |
| rape 6/6/89 89-02738 | X | X | X |
| assault with intent to commit robbery w/ DW 6/10/85 85-00448 | X | X | X |
| aggravated assault 6/10/85 85-00449 | X | X | X |
| | | Additional finding in verdict: aggravated assault w/intent to commit robbery 11/7/98 | Also included: aggravated assault w/intent to commit robbery |